IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**RAYMOND A.,**[1]

        Plaintiff,　　　　　　　　　　Civ. No. 6:24-cv-00481-AA

v.　　　　　　　　　　　　　　　　**OPINION & ORDER**

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

AIKEN, District Judge:

Plaintiff Raymond A. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and this case is REMANDED for further proceedings consistent with this order.

## BACKGROUND

On March 3, 2021, Plaintiff filed an application for disability insurance benefits and supplemental security income alleging disability beginning on February 19, 2021. Tr. 10. The applications were denied initially and upon reconsideration and, at Plaintiff's request, a telephonic hearing was held before an

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Administrative Law Judge ("ALJ") on October 6, 2022. *Id.* On November 2, 2022, the ALJ issued a decision finding Plaintiff not disabled. Tr. 20. On January 11, 2024, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the

Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, February 19, 2021. Tr. 12.

At step two, the ALJ found that Plaintiff had the following severe impairments: chronic idiopathic neutropenia; plaque psoriasis; lymphopenia; and autoimmune thrombocytopenia. Tr. 13. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id*.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: he is able to lift and/or carry twenty pounds occasionally and ten pounds or less frequently. He can sit six hours in an eight-hour workday and stand/walk a combined six hours in an eight-hour workday. He has no limits in reaching. He can climb stairs frequently. He can climb ladders, scaffolds, and such devices occasionally. He can balance, crouch, kneel, stoop, and crawl frequently. He has no manipulation, visual, or communication limits. Environmentally, he must avoid concentrated exposure to or have no more than

occasional exposure to extreme cold, high heat, high humidity, wet conditions, dusts, fumes, odors, gases, and poor ventilation   Tr. 14.

At step four, the ALJ found Plaintiff was able to perform his past relevant work as a barista or coffee maker.  Tr. 18. The ALJ made the alternative finding at step five that Plaintiff was capable of performing work that exists in significant numbers in the economy as a pricer/price monitor, office helper, and mailroom clerk.  Tr. 19. As a result, the ALJ found that Plaintiff was not disabled. Tr. 22.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.

2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting his subjective symptom testimony; and (2) improperly discounting the medical opinion evidence of Dr. Marc Uemura.

### I.   Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks

and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's testimony, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff asserts that his impairments cause chronic fatigue and put him at increased risk for contracting illnesses. Tr. 306. Plaintiff testified that his treatment regimen includes daily prednisone which makes his skin itch and his eyes and head "feel foggy." Tr. 41-42. Once a month, he travels to an oncology clinic to receive an infusion, a treatment process that lasts "at least eight hour[s]." Tr. 45. He has been hospitalized in "near death situations" from his blood disorder and required blood transfusions to stabilize his platelet counts. Tr. 42-43.

Plaintiff, his fiancé, and their two children now live with his fiancé's parents. Tr. 45. Beyond medical appointments, Plaintiff testified that he rarely leaves his home for fear of becoming ill. Tr. 307, 310. He orders groceries online, which his fiancé drives to pick up. Tr. 44. He frequently needs to lie down and rest due to fatigue. Tr. 310. He testified he no longer feels comfortable seeing primary care doctors due to their lack of knowledge regarding his unique impairments. He now relies on his oncology and immunology specialists for all of his medical care. Tr. 45.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these

Page 6 – OPINION & ORDER

symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 14. Specifically, the ALJ concluded Plaintiff's statements were not consistent with the record because "the objective medical evidence does not show clinical finding[s] to support greater limitations than set out in the [RFC]." *Id*. The ALJ then provided a summary of the objective medical evidence, concluding that "[o]verall, the records show that the claimant has continued to report doing well clinically with his current regimen…. The [] RFC for a range of light [work] accounts for the claimant's skin and immune disorders by limiting the time on his feet, postural activities, and environmental exposures." Tr. 17.

Upon review, the Court concludes that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. The ALJ relied on objective medical evidence in discounting Plaintiff's symptoms but failed to explain how the evidence conflicted with Plaintiff's symptom testimony. An ALJ may rely on conflicts between a claimant's testimony and the objective medical evidence as a proper basis for discounting subjective symptom testimony. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999). However, the court "may not take a general finding—an unspecified conflict between Claimant's testimony … and [the medical evidence]—and comb the administrative record to find specific conflicts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

In this case, the ALJ failed to point to any conflict or inconsistency between Plaintiff's testimony and the objective medical evidence. Instead, the ALJ merely provided a summary of the objective medical evidence and concluded that the

evidence supported the ALJ's RFC decision. *See* Tr. 14-17. At no point did the ALJ identify which of Plaintiff's statements he found to be inconsistent with the medical evidence and why. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015).

This failure is brought more sharply into focus, because the ALJ did acknowledge Plaintiff's symptom testimony at the administrative hearing. During the hearing, the ALJ constructed a hypothetical to the vocational expert ("VE") based on Plaintiff's testimony that his medical conditions resulted in increased risk for developing infections as well as chronic fatigue from long-term steroid use. Tr. 51-52. The ALJ noted in the hypothetical that this person would likely miss "two or three days of work" a month due to their symptoms. Tr. 52. When asked if such a person could perform past work as a barista, the VE explained that the proposed level of absenteeism would preclude such a person from competitive full-time employment. *Id*.

In the decision, however, the ALJ did not discuss any of the symptoms he identified in the hypothetical to the VE. The ALJ did not discuss why he discounted Plaintiff's allegations of chronic fatigue, brought on by his daily prednisone regime, nor did the ALJ discuss how Plaintiff's monthly infusion regimen would impact his employability. The VE testified that taking off one day a month for treatment would effectively use up Plaintiff's "full tolerance for absences" every month. *See* Tr. 53. The ALJ also did not discuss Plaintiff's concerns for increased risk of infection. Indeed, as stated above, the ALJ makes no reference to any part of Plaintiff's testimony at any point in the decision.

The ALJ's failure to identify inconsistencies or conflicts between Plaintiff's symptom testimony and the medical evidence does not allow the Court an opportunity to meaningfully review the ALJ's decision and amounts to reversible legal error. *See Brown-Hunter*, 806 F.3d at 492 (the agency must "set forth the reasoning behind its decisions in such a way that allows meaningful review").

## II.     Medical Opinion Evidence

Plaintiff next argues that the ALJ erred in discounting the medical opinion of treating physician Marc Uemura, M.D., M.B.A. The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are *supportability* and *consistency*." *Id.* at 791 (emphasis added, internal quotation marks and citations omitted). For supportability, the regulations provide that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As for consistency: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim,

the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Dr. Uemura began treating Plaintiff in January 2020. Tr. 383, 501. In September 2022, Dr. Uemura submitted a medical opinion in support of Plaintiff's disability claim. *See* Tr. 1124. He listed Plaintiff's diagnoses as immune dysregulatory syndrome/deficiency, Evan's syndrome, autoimmune hemolytic anemia, and immune thrombocytopenia. *Id*. Dr. Uemura explained that Plaintiff's diagnoses lead to symptoms including "recurrent severe cytopenia, recurrent infections, splenomegaly, petechiae, and chronic fatigue." *Id*. He further explained that Plaintiff's case has been "difficult to fully characterize/classify" and that Plaintiff also receives care through the University of Washington Department of Immunology. *Id*. Dr. Uemura explained that Plaintiff's "hematologic conditions are chronic and unexpected to be cured." *Id*. Furthermore, Dr. Uemura noted Plaintiff is at continued "high risk for developing infections and bleeding." *Id*. Dr. Uemura concluded that it would be "challenging" for Plaintiff to sustain full-time work on a regular basis, given his chronic conditions. *Id*.

The ALJ found Dr. Uemura's opinion "unpersuasive." Tr. 17. With respect to supportability, the ALJ concluded Dr. Uemura "supported this opinion by noting the claimant was at 'high risk' for developing infections and bleeding and he had chronic fatigue from being on steroid therapy long-term." *Id*. However, the ALJ found that Dr. Uemura failed to provide any "vocationally relevant limitations." *Id*. With respect to consistency, the ALJ concluded that Dr. Uemura's opinion was "not consistent with

the full record, which shows improvement and stability in his condition and lab work with consistent treatment." *Id*.

Although the Court disagrees with the ALJ's conclusions as to the consistency of Dr. Uemura's opinion, the ALJ's conclusion that Dr. Uemura failed to provide any vocationally relevant limitations is reasonable. Under the revised regulations, statements such as whether a claimant is able to perform regular or continuing work are neither valuable nor persuasive. 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). Dr. Uemura's statement that it would be "challenging" for Plaintiff to sustain full-time work on a regular basis is thus neither valuable nor persuasive, as it opines as to Plaintiff's ability to sustain full-time work. No other portion of Dr. Uemura's opinion amounts to a vocationally relevant limitation. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) ("a medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairments"). Because Dr. Uemura did not provide any statements as to what Plaintiff is still capable of doing despite his impairments, the ALJ properly discounted his medical opinion.

In sum, the Court concludes that the ALJ did not err by discounting the medical opinion of Dr. Uemura.

### III. Remand

The Court has determined that the ALJ's opinion contains harmful errors and must be remanded for further proceedings. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014).

Page 11 – OPINION & ORDER

A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. Id at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

Here the ALJ erred by failing to properly consider the Plaintiff's subjective symptom testimony. Although the ALJ provided a summary of the objective evidence within the record, the ALJ failed to provide clear and convincing reasons supported by substantial evidence for finding Plaintiff's testimony was inconsistent with the medical evidence. Nevertheless, the record is ambiguous as to whether the Plaintiff is, in fact, disabled within the meaning of the Act. The Court thus concludes the reconciliation of Plaintiff's testimony and the other evidence in the record is a matter that should be addressed by the ALJ. The Court thus remands the case for further proceedings.

///

///

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

It is so ORDERED and DATED this ___16th___ day of July 2025.


                                               /s/Ann Aiken
                                              ANN AIKEN
                                              United States District Judge